UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK E. WHITE,

       Petitioner,

v.                             Case No. 12-13996

PAUL KLEE,                Honorable Patrick J. Duggan

       Respondent.

_____/

**OPINION AND ORDER (1) DENYING THE HABEAS CORPUS
PETITION (ECF NO. 1); (2) DENYING  PETITIONER'S MOTION FOR
RELIEF FROM JUDGMENT (ECF NO. 20); (3) GRANTING
PETITIONER'S MOTION TO SUPPLEMENT HIS MOTION FOR
SUMMARY JUDGMENT (ECF NO. 22) BUT DENYING PETITIONER'S
MOTION FOR SUMMARY JUDGMENT (ECF NO. 21); AND (4)
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY BUT
GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Petitioner Mark E. White, a Michigan Department of Corrections Prisoner

confined at the Chippewa Correctional Facility in Kincheloe, Michigan filed a pro

se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 on September 11,

2012.  In 2010, a Saginaw County jury convicted Petitioner of bank robbery, in

violation of Michigan Compiled Laws § 750.531, false report of a bomb threat,

Michigan Compiled Laws § 750.411a, carjacking, Michigan Compiled Laws §

750.529a, and resisting and obstructing a police officer, Michigan Compiled Laws

§ 750.81d(1).  Petitioner's convictions and sentences were affirmed by the state

appellate court on direct appeal.  In the present habeas application, Petitioner

challenges his convictions, and his sentences, on a multiplicity of grounds.

In addition to the underlying habeas petition, the following motions are

pending in this matter: (1) Petitioner's motion for relief from judgment, (2)

Petitioner's motion for summary judgment, and (3) Petitioner's motion to

supplement his motion for summary judgment.  Having thoroughly reviewed the

claims asserted in the habeas application, Respondent's response and Rule 5

materials, as well as the arguments raised in Petitioner's other motions, the Court

concludes that Petitioner is not entitled to the issuance of the writ.  Accordingly,

the Court grants Petitioner's motion to supplement but denies the petition as well

as Petitioner's pending motions for relief from judgment and for summary

judgment.  The Court declines to issue a certificate of appealability.

## I.  BACKGROUND

Petitioner's convictions stem from a jury trial in Saginaw County, Michigan.

The Court recites verbatim the relevant facts relied upon by the Michigan Court of

Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. §

2254(e)(1).  The trial testimony established the following:

> On July 8, 2009, a man approached Ashley Earle's teller
> window at Citizens Bank in Saginaw.  The man handed Earle a note
> and placed a small bag on the counter.  The note read, "Do not call.
> The bomb will go off.  Lock the door for 30 minutes.  You are being

2

watched.  Do not call." The handwriting on the note was difficult to read and Earle was only able to read a few of the sentences.  Earle looked at the man, and he told her, "Hundreds, fifties, and twenties, no straps, no dye packs." Earle gave the man the money in her teller drawer.  The money totaled $1,055.  After the man walked out of the bank, Earle pressed the security alarm button.  At trial, Earle identified the man as defendant.

Officer Scott Jackson, who was working in plain clothes and in an unmarked vehicle on July 8, 2009, responded to the dispatch call of a bank robbery with the intent to search for the suspect.  He observed a man fitting the suspect's description, and he saw a marked patrol vehicle drive past the man. According to Jackson, the man took "specific notice" of the marked patrol vehicle because the man changed the direction he was walking.  Jackson pulled over to the area where the man was walking.  He intended to pull in front of the man and let the marked patrol vehicle, which was turning around, stop behind the man.  As Jackson slowed his vehicle, the man walked toward it, waving him down for a ride.  When Jackson stopped his vehicle, the man opened the passenger side door and "immediately fell on top of" Jackson.  The man put his left shoulder into Jackson's right shoulder and placed both of his hands on the steering wheel.  He took partial control of the vehicle.  Jackson punched and yelled at the man to get out of the vehicle.  He forced the man out of the passenger door, and followed him out, laying on top of the man on the ground.

Outside on the ground, Jackson repeatedly told the man, "[P]olice, give me your hands, give me your hands." Jackson secured the man's left hand, but the man's right hand was under his body and the man refused to give it up.  Officer Ian Wenger, the driver of the marked patrol vehicle, approached the two men.  He advised the man that he was a police officer and ordered the man to give up his hands. When the man continued to struggle, Wenger tased him.  Even after the tase cycle stopped, the man continued to resist Jackson and Wenger before the two officers were able to control him.  The man, later identified as defendant, was handcuffed, and $1,055 was found in his pocket during a pat down.

3

> According to Wenger, he activated his vehicle's lights and siren when he observed defendant approach Jackson's vehicle. Jackson could not recall if the lights on the marked patrol vehicle were activated, but he recalled hearing a siren while he was on the ground struggling with defendant.

*People v. White*, No. 297914, 2011 WL 2424504, at *1-2 (Mich. Ct. App. June 16, 2011) (per curiam) (unpublished).

On March 17, 2010, Petitioner's jury found him guilty, as charged, of bank robbery, false report of a bomb threat, carjacking, and resisting and obstructing a police officer. The trial court sentenced Petitioner to concurrent terms of fourteen to seventy years in prison for the bank robbery, seven to fifteen years for the false report of a bomb threat and for resisting or obstructing a police officer, and thirty-five to seventy years for the carjacking.

On direct appeal, Petitioner presented two arguments to the Michigan Court of Appeals through counsel and raised ten others in a pro se supplemental standard 4 brief. The state appellate court rejected each argument, affirming Petitioner's convictions and sentences in an unpublished, per curiam opinion. *Id.* On October 24, 2011, the Michigan Supreme Court denied leave to appeal. *People v. White*, 490 Mich. 895, 804 N.W.2d 335 (2011) (table).

Petitioner filed his habeas corpus petition in this Court on September 11, 2012. Petitioner asserts the following grounds for relief: (1) he was denied his

4

right to self-representation at the preliminary examination; (2) his state court transcripts were altered or falsified; (3) the state trial court permitted standby counsel to make all tactical decisions; (4) he was denied his right to present a medical defense; (5) he was denied his right of access to the courts; (6) he was denied his right to call witnesses in his defense; (7) the prosecutor committed misconduct by misleading the trial court, withholding evidence, and vouching for witnesses and evidence; (8) the carjacking statute is void for vagueness, and the prosecutor abused his discretion by charging him with carjacking; (9) he was not brought to trial within 180 days in violation of state law; (10) he was denied due process of law on appeal; (11) the evidence at trial was insufficient and his sentence was based on improperly scored sentencing guidelines and inaccurate information.

Also pending before the Court are Petitioner's motion for relief from judgment, his motion for summary judgment, and his motion to supplement his motion for summary judgment.  In his motion for relief from judgment (ECF No. 20), Petitioner seeks appointment of counsel and an evidentiary hearing on the serial numbers of the "bait" money given to the robber.[1]  In the alternative,

---

[1] In an Opinion and Order issued on July 25, 2013, the Court denied, *inter alia*, Petitioner's motions for appointment of counsel, discovery, and the admission of suppressed evidence. With respect to the serial numbers issue, the Court

Petitioner seeks a stay of these proceedings so that he can raise the matter of the "bait" money in the state court.

In his motion for summary judgment (ECF No. 21), Petitioner seeks summary judgment on his claims that he was denied his rights to represent himself, to present a defense, and to have access to the courts. Additionally, he asserts that the prosecution withheld evidence. Finally, in his motion to supplement the motion for summary judgment (ECF No. 22), Petitioner cites *People v. Chenault*, 495 Mich. 142, 845 N.W.2d 731 (2014), to support his claim that the prosecutor withheld evidence.

## II.  STANDARD OF REVIEW

---

concluded "that the state appellate court adjudicated Petitioner's claim on the merits and, as a consequence, this Court is limited to the record that was before the state court."

The Court also notes that the pending motion for relief from judgment is Petitioner's second such motion. The Court denied Petitioner's first motion for relief from judgment in an Order dated September 30, 2013. The Court explained that Federal Rule of Civil Procedure 60(b) is a mechanism to seek relief from a *final* judgment. Because the Court's July 25, 2013 Opinion and Order was not a final judgment, but rather disposed of preliminary, non-dispositive motions, Petitioner's first motion for relief from judgment was denied on ripeness grounds. The same may be said of the pending Rule 60 motion. To date, the Court has not issued a final judgment that may be challenged by way of Rule 60. Accordingly, the Court **DENIES** Petitioner's pending motion for relief from judgment.

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Pub. L. No. 104-132, 110 Stat. 1214.  In order to grant relief, this Court must conclude that the state court's decision "with respect to any claim that was adjudicated on the merits in State court proceedings" was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[]" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

The Supreme Court has expounded upon the meanings of the two clauses contained in 28 U.S.C. § 2254(d)(1).  *Williams v. Taylor*, 529 U.S. 362, 405, 120 S. Ct. 1495, 1519 (2000) (O'Connor, J., opinion of the Court for Part II) ("[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning.").  "A state-court decision is contrary to clearly established federal law if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent."  *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009) (alterations in original) (internal quotation marks omitted) (quoting *Williams*, 529 U.S. at 405, 120 S. Ct. at 1519).

Alternatively, "[i]f the state court identifies the correct governing legal principle . . . , habeas relief is available under the unreasonable application clause if the state court unreasonably applies that principle to the facts of the prisoner's case or unreasonably extends or unreasonably refuses to extend a legal principle from the Supreme Court precedent to a new context." *Akins v. Easterling*, 648 F.3d 380, 385 (6th Cir. 2011) (internal quotation marks and alterations omitted).  A federal court may not find a state court's application of Supreme Court precedent unreasonable if it is merely "incorrect or erroneous.  [Rather, t]he state court's application must have been 'objectively unreasonable.'"  *See, e.g.*, *Wiggins v. Smith*, 539 U.S. 510, 520-21, 123 S. Ct. 2527, 2535 (2003) (citations omitted).

Factual determinations made by state court judges in the adjudication of claims cognizable on habeas review are accorded a presumption of correctness.  28 U.S.C. § 2254(e)(1).  A habeas petitioner may rebut this presumption only with clear and convincing evidence.  *Id.*  Moreover, habeas review of claims adjudicated on the merits in state courts is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. __, 131 S. Ct. 1388, 1398 (2011).

## III.  ANALYSIS

### A.  Denial of the Right to Self-Representation

In his first ground for relief, Petitioner contends that he was denied his right

8

to self-representation during his preliminary examination.  The Michigan Court of Appeals adjudicated this claim on direct review and found the claim lacking in merit.  Specifically, the state appellate court explained that Petitioner did not make an unequivocal request to represent himself until after he was bound over for trial.

### 1.  Clearly Established Federal Law

As the United States Court of Appeals for the Sixth Circuit once explained in the context of self-representation cases, "the universe of clearly established federal law as determined by the Supreme Court, 28 U.S.C. § 2254(d)(1), is narrow.  It consists of one decision, *Faretta v. California*, 422 U.S. 806, [] 95 S.Ct. 2525 (1975), the leading Supreme Court decision to reach a holding on the Sixth Amendment right of self-representation at trial."  *Jones v. Jamrog*, 414 F.3d 585, 591 (6th Cir. 2005).  There are, "to be sure, other Supreme Court decisions on the periphery of *Faretta*," and another of those, a case involving the responsibilities of standby counsel, is implicated in this case and discussed in the next section.  *Id.* (citations omitted).

The Sixth Amendment, applicable to the states through the Fourteenth Amendment's Due Process Clause, provides that a criminal defendant shall have the right to the assistance of counsel in his defense.  U.S. Const. amend. VI.  This affirmative right implies that a defendant has a corollary  right, inherent in the

structure of the Sixth Amendment, to proceed without counsel and to represent himself. *Faretta*, 422 U.S. at 819, 95 S. Ct. at 2533 ("The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants the accused personally the right to make his defense."). As with the waiver of other rights of constitutional dimension, a defendant's waiver of his right to counsel and decision to proceed pro se must be knowing and intelligent. *Id.* at 807, 95 S. Ct. at 2527. The adequacy of a waiver is determined from the facts and circumstances of the case. *Iowa v. Tovar*, 541 U.S. 77, 88, 124 S. Ct. 1379, 1387 (2004).

> [S]ince a defendant must act affirmatively to relinquish the right to counsel, it follows that the right [to self-representation] must affirmatively be asserted as well. [The Supreme Court] thus ha[s] emphasized that courts should not bend over backward to hold that a defendant, who merely hints that he might be better off representing himself, has waived his right to counsel.

*Raulerson v. Wainwright*, 469 U.S. 966, 969, 105 S. Ct. 366, 368 (1984) (Marshall, J., dissenting from the denial of a petition for writ of certiorari). A request for self-representation must be made clearly and unequivocally. *See, e.g.*, *Buhl v. Cooksey*, 233 F.3d 783, 792 (3d Cir. 2000).

### 2. The Preliminary Examination Conference

Petitioner appeared before the state district court for a preliminary examination conference on July 16, 2009. Petitioner, who was on parole at the time, asked the state district court judge to send him back to prison so that he could

10

obtain pain medication and have access to a law library.  During the course of that

colloquy, the state district judge observed that a person as coherent as Petitioner

would not have any problems assisting his attorney.  In response, Petitioner stated,

"I was going ask for co-counsel status under the Michigan Constitution . . . ."

(7/16/09 Tr. 6-7.)  The state district judge subsequently cautioned Petitioner

against representing himself.  Addressing defense counsel, the judge stated:

> [Y]ou can take it up with him on who's representing him if you're
> sitting as a – if he's going to ask the questions or whatever.  You can
> decide together.

(*Id*. at 9.)  Immediately after this comment, Petitioner interjected:

> I don't intend to stand up in front of this court your Honor, and
> posture and try to play lawyer.  I don't do that. . . . . It's not intention
> (sic) at all.

(*Id*.)  The conference concluded with the judge stating the following:

> Okay, well you have spoken today on your own behalf and the Court
> has allowed you to and the Court would allow you to do the same to
> bring things to my attention in the future.

(*Id*. at 10.)

Five days later on July 21, 2009, Petitioner wrote a letter to the state district

judge indicating that he had asserted his right to self-representation at the July 16

conference.  Petitioner also reiterated his concerns about his lack of access to a law

library and asserted that he was being denied his right to a speedy trial.  (7/21/09

11

Letter, Pet. Ex. A.)

### 3. The Preliminary Examination

On July 24, 2009, the state district judge conducted the preliminary examination.  Defense counsel represented Petitioner at this hearing.  Petitioner made only two remarks during the questioning of witnesses.  He objected when Ms. Earle identified him as the bank robber, and when she hesitated to answer the prosecutor's question about whether there were video cameras in the bank, Petitioner interjected, "Teller areas."  (7/24/09 Tr. 8, 13.)  Defense counsel cross-examined the prosecution witnesses, made the decision not to produce any witnesses, and opposed the prosecution's motion to bind Petitioner over for trial.

After the state district judge ruled that there was probable cause to believe the charged offenses were committed and that Petitioner committed them, the court acknowledged Petitioner's letter to the court in which Petitioner asserted his right to a speedy trial and complained that he was being denied access to a law library computer.  Petitioner asked the district judge to release him to the Michigan Department of Corrections so that he could acquire pain pills and access a law library.  The state district judge declined to rule on whether Petitioner could be sent back to prison, indicating that it had no control over the issue.  Petitioner responded, "Okay, well if I can't use the law library, I'm being denied the right to

represent myself, which I put on record." (*Id.* at 47.) The hearing concluded with the judge's comment that he had no personal knowledge about the situation at the jail and Petitioner's reply that he had been unable to get a response to the grievances that he had written.

At no point prior to Petitioner's colloquy with the state district judge did Petitioner "clearly and unequivocally" declare that he wanted to represent himself at the preliminary examination and that he did not want counsel to represent him. *Faretta*, 422 U.S. at 835, 95 S. Ct. at 2541. Thus, the state appellate court's conclusion – that Petitioner did not make an unequivocal request to represent himself until after he was bound over for trial – was objectively reasonable. The state court's decision was neither contrary to, nor an unreasonable application of, *Faretta*. Petitioner is not entitled to relief on his first claim.

**B. Standby Counsel**

In his third claim for relief, which the Court addresses second as it logically follows the self-representation issue discussed above, Petitioner asserts that the state trial court forced him to proceed with standby counsel and permitted standby counsel to make all tactical decisions in his case. The Michigan Court of Appeals found no merit in this argument on direct appeal.

In *Faretta*, the Supreme Court explained that a state may not "hale a person

13

into its criminal courts and there force a lawyer upon him . . . ."  422 U.S. at 807,

95 S. Ct. at 2527.  Nevertheless,

> [a] defendant's Sixth Amendment rights are not violated when a trial
> judge appoints standby counsel - even over the defendant's objection -
> to relieve the judge of the need to explain and enforce basic rules of
> courtroom protocol or to assist the defendant in overcoming routine
> obstacles that stand in the way of the defendant's achievement of his
> own clearly indicated goals.  Participation by counsel to steer a
> defendant through the basic procedures of trial is permissible even in
> the unlikely event that it somewhat undermines the *pro se* defendant's
> appearance of control over his own defense.

*McKaskle v. Wiggins*, 465 U.S. 168, 184, 104 S. Ct. 944, 954 (1984) (holding that

the participation at trial of standby counsel does not necessarily infringe the right

to represent oneself).  "In determining whether a defendant's *Faretta* rights have

been respected, the primary focus must be on whether the defendant had a fair

chance to present his case in his own way."  *Id.* at 177, 104 S. Ct. at 950.

The record belies Petitioner's claim that he did not want standby counsel and

that the trial court forced one upon him.  At one pretrial hearing, Petitioner

indicated that he would need help securing witnesses and with other discovery

issues and that he did not object to the appointment of standby counsel.  He also

stated that it was "perfectly acceptable" for standby counsel to sit behind him at

trial and be available to him for questioning.  (9/14/09 Hr'g Tr. 6-9.)

As for tactical decisions, Petitioner made the decision not to seek an

14

independent evaluation of competency (1/4/10 Hr'g Tr. 3-4) and not to testify at trial (5/17/10 Trial Tr. (Vol. II) 115). He also filed pro se pretrial motions, and, at trial, he conducted voir dire, made an opening statement, conducted cross-examination of prosecution witnesses, and made a closing argument. Petitioner participated in discussions about the jury instructions, and expressed satisfaction with the jury instructions as read to the jury.

Standby counsel did not interfere with Petitioner's handling of the case, and he appears to have been unobtrusive at trial. Standby counsel did prevail on the issue of whether Petitioner could call certain witnesses to establish a defense based on lack of responsibility due to medical or mental reasons, *see infra*. But that decision was based on the fact that a diminished capacity defense is no longer permitted in Michigan. *See People v. Carpenter*, 464 Mich. 223, 237, 241, 627 N.W.2d 276, 283, 285 (2001) (concluding that the state legislature "created an all or nothing insanity defense" and that, by enacting "a comprehensive statutory scheme setting forth the requirements for and the effects of asserting a defense based on either mental illness or mental retardation," the Legislature signified its intent not to allow evidence of a defendant's lack of mental capacity short of legal insanity to avoid or reduce criminal responsibility by negating specific intent").

Petitioner had a fair chance to present his case in his own way. The trial

15

court did not force standby counsel on Petitioner and standby counsel was not permitted to make all the tactical decisions in the case. Habeas relief, therefore, is not warranted on claim three.

## C. The Transcripts

Petitioner's second habeas claim is that his rights to due process and an effective appeal were violated by the alteration or falsification of state court transcripts. The Michigan Court of Appeals found no merit in this claim because Petitioner did not provide any independent corroboration of the alleged inaccuracies, nor explain how the purported inaccuracies adversely affected his ability to appeal his convictions.[2]

A conviction based on "a seriously disputed record, whose accuracy petitioner has had no voice in determining, cannot be allowed to stand." *Chessman v. Teets*, 354 U.S. 156, 164, 77 S. Ct. 1127, 1132 (1957). But a transcript failing to capture the entirety of the proceedings "is not a *per se* denial of [the] due process right to a fair appeal." *Bransford v. Brown*, 806 F.2d 83, 86 (6th Cir. 1986) (rejecting defendant's contention that a transcript missing the jury instructions resulted in a denial of his due process rights). To demonstrate denial of a fair

---

[2] The Court notes that its July 25, 2013 Opinion and Order addressed Petitioner's contentions regarding the purported inaccuracies in the state court transcripts in the context of a discovery motion filed by Petitioner.

appeal, a habeas petitioner must show that prejudice, something more than gross speculation, resulted from a missing transcript or missing portion of a transcript. *Id.* ("Any time a page is missing from a transcript we cannot assume that reversible error may have been reflected on that page, but rather some modicum of evidence must support such a conclusion.").

Petitioner contends that the transcripts fail to reflect: (1) Ms. Earle's statement that she watched a video of the robbery with a police officer immediately after the robbery; (2) Petitioner's assertion of his right to represent himself at the preliminary examination; (3) Petitioner's comment at his arraignment that he asserted his right to represent himself at the preliminary examination and that the state district court granted his request; (4) Petitioner's statement at a hearing on October 12, 2009 that a vehicle was in the parking lot; and (5) Petitioner's comment at a pretrial motion hearing on December 17, 2009 that he did not need standby counsel, as counsel was not helping him.

Petitioner has not shown any prejudice as a result of the allegedly missing statements that the bank teller watched a video of the robbery and that a vehicle was present in the parking lot.

As for the alleged omission of Petitioner's request to represent himself at the preliminary examination, Petitioner says that he was prejudiced because the

17

Michigan Court of Appeals concluded from the transcript that he never unequivocally expressed his right to self-representation.  The court reporter, however, certified that the transcript of the preliminary examination was a complete, true, and accurate record of the proceeding.  Further, two other state district court employees subsequently compared some of the testimony at the preliminary examination with the transcript of the examination and determined that the transcript is a true and accurate reflection of the testimony.  (Pet. Ex. B.) Moreover, Petitioner has failed to corroborate his claim of inaccuracy with any independent evidence that he asserted his right of self-representation at the preliminary examination.

The Court therefore concludes that the state appellate court's rejection of Petitioner's claim about inaccuracies in the state court transcripts was not contrary to, or an unreasonable application, of any Supreme Court decision.  The Court declines to grant relief on Petitioner's second claim.

## D.  The Right to Present a Defense and Call Witnesses

The fourth claim alleges that Petitioner was denied his constitutional right to present a "medical and mental" defense based on his prior closed-head injuries and the fact that his diabetes, combined with prescription drugs, can cause confusion, difficulty speaking, and uncooperative behavior.  In his sixth claim, Petitioner

18

suggests that he was denied his constitutional right to call witnesses because he failed to serve the prosecutor with a witness list. Petitioner says that his witnesses would have testified that he was hospitalized two days before the robbery and that, contrary to the trial testimony, he was unable to resist the arresting officers. The Michigan Court of Appeals found no merit to these claims.

### 1. Clearly Established Federal Law

"[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense,'" but the Supreme Court has "never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability – even if the defendant would prefer to see that evidence admitted." *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 2146 (1986) (citations omitted). Thus, "[a] defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308, 118 S. Ct. 1261, 1264 (1998). Although the Constitution

> prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury. . . . [T]he Constitution permits judges to exclude evidence that is repetitive . . . , only marginally relevant or

19

poses an undue risk of harassment, prejudice, [or] confusion of the
issues.

*Holmes v. South Carolina*, 547 U.S. 319, 326-27, 126 S. Ct. 1727, 1732 (2006)

(quotation marks and citations omitted) (second alteration in original).  "This

court's duty 'is not to determine whether the exclusion of the evidence by the trial

judge was correct or incorrect under state law, but rather whether such exclusion

rendered petitioner's trial so fundamentally unfair as to constitute a denial of

federal constitutional rights.'"  *Lewis v. Wilkinson*, 307 F.3d 413, 420 (6th Cir.

2002) (quoting *Logan v. Marshall*, 680 F.2d 1121, 1123 (6th Cir. 1982)).

### 2.  The Relevant Facts

The Michigan Court of Appeals summarized the relevant facts as follows:

> In November 2009, defendant provided two copies of a witness
> list to a sheriff deputy to deliver to the trial court.  One copy was for
> the trial court, which was filed on November 11, 2009.  The second
> copy was for the prosecutor; defendant requested the clerk to serve
> that copy on the prosecutor's office.  The witness list included Dr.
> Brian Hartfelder, an emergency room doctor who treated defendant
> for hip and joint pain on June 22, 2009.  The prosecutor's office never
> received its copy of the witness list.  The prosecutor discovered the
> witness list when he examined the court file in the days before trial.
>
> In March 2010, defendant gave standby counsel a witness list
> with names of persons that defendant wanted subpoenaed for trial.
> According to standby counsel, the purpose of the testimony of the
> persons named on the list would be to establish a diminished capacity
> defense.  Because the Supreme Court had abolished the diminished
> capacity defense, *People v. Carpenter*, 464 Mich. 223; 627 NW2d 276
> (2001), standby counsel stated that he, as an officer of the court, could

not subpoena persons who would not be allowed to testify. One of the persons that defendant requested standby counsel to subpoena was Dr. Wael Haider, who treated defendant from July 3–6, 2009, for an infected toe and nausea and vomiting.

During the first day of trial, with regard to defendant's witnesses, the trial court stated that "the rules haven't been followed" and it would "prevent bringing in witnesses that aren't properly in accordance with the rules." It also stated that, "in any event," based on standby counsel's explanation of why defendant had recently sought medical treatment it would deny any request by defendant to present any medical evidence.

*White*, No. 297912, 2011 WL 2424504, at *5-6.

### 3. Application

The rule requiring Petitioner to serve his witness list on the prosecutor in a timely manner serves the legitimate purpose of giving notice to the prosecution of anticipated defense witnesses. And preventing Petitioner from calling the people on his witness list was an appropriate sanction for violating the rule. *Cf. Taylor v. Illinois*, 484 U.S. 400, 401-02, 108 S.Ct. 646, 649 (1988) (holding that the Sixth Amendment does not prohibit a trial court from refusing to allow a defense witness to testify if the defendant failed to identify the witness in response to a pretrial discovery request). Furthermore, to the extent Petitioner was trying to use his medical condition to establish a diminished capacity defense or to negate his intent, his witnesses' testimony would have been irrelevant, and therefore excludable, under the rule articulated in *Carpenter*, 464 Mich. at 223, 627 N.W.2d at 276.

21

(3/15/10 Hr'g Tr. 4-6.)  During a March 2010 hearing, the state court judge and standby counsel explained the nonexistence of the diminished capacity defense to Petitioner and reminded Petitioner that the prosecution shouldered the burden of proving intent.

The Court concludes that the trial court's exclusion of witnesses and rejection of  Petitioner's "medical and mental" defense was not an unconstitutional deprivation of  Petitioner's right to defend himself.  The state appellate court therefore reasonably rejected Petitioner's claims, and Petitioner is not entitled to habeas relief on his fourth or sixth claim.

**E.  Access to the Courts**

Petitioner asserts in his fifth claim that he was denied his right of access to the courts when the trial court, standby counsel, and jail officials refused to provide him with postage, which he needed to serve legal documents on the prosecutor. The Michigan Court of Appeals found no merit in this claim.

Petitioner was confined in jail before trial and he had a constitutional right to adequate, effective, and meaningful access to the courts.  *Bounds v. Smith*, 430 U.S. 817, 821-22, 97 S. Ct. 1491, 1494-95 (1977).  This right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from

22

persons trained in the law." *Id*. at 828, 97 S. Ct. at 1498. "[I]ndigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them." *Id*. at 824-25, 97 S. Ct. at 1496.

Petitioner alleges that he was denied sufficient postage for large envelopes, which he needed to serve motions and a witness list on the prosecutor. He informed the trial court on the first day of trial that jail officials allotted him only two $.44 pre-stamped envelopes per week and that many of his motions were too large for the envelopes. (3/16/10 Trial Tr. (Vol. I) 18.) The record, however, indicates that Petitioner filed "a massive amount of motions" (3/1/10 Hr'g Tr. 18) and that, in addition to his criminal case, he was pursuing unrelated litigation had the ability to pay for some of the postage that he needed for his legal documents. (2/1/10 Hr'g Tr. 13-14.) The initial witness list, in fact, was filed in the state court. (3/16/10 Trial Tr. (Vol. I) 9.)

The Court finds that Petitioner's right of access to the courts was not abridged, as Petitioner had meaningful and adequate access to the courts throughout the proceedings against him.

**F. Prosecutorial Misconduct**

In his seventh claim, Petitioner contends that the prosecutor committed misconduct by misleading the trial court, withholding evidence, and vouching for witnesses and evidence. This claim pertains to a videotape of the robbery, a police officer's report and notes regarding his interview with Ms. Earle, and serial numbers on the "bait" money taken during the robbery. The Michigan Court of Appeals found no merit to these claims.

Prosecutors "must refrain from interjecting personal beliefs into the presentation of [their] case[s]." *United States v. Young*, 470 U.S. 1, 8-9, 105 S. Ct. 1038, 1043 (1985). A prosecutor's suppression "of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. United States*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97 (1963). "[E]vidence is 'material' within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Cone v. Bell*, 556 U.S. 449, 469–70, 129 S. Ct. 1769, 1783 (2009). To state a *Brady* violation, the petitioner must demonstrate that (1) the evidence at issue was favorable to him, either because it was exculpatory or impeaching, (2) the state suppressed the evidence, either

24

willfully or inadvertently, and (3) prejudice resulted. *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 1948 (1999).

### 1. The Videotape

Petitioner alleges that the prosecutor suppressed a videotape of the robbery and misled him by insinuating that the bank had custody of the videotape. He also suggests that the prosecution tampered with the videotape and that the prosecutor improperly vouched for Police Officer Freddy Johnson when Johnson stated that he had custody of the videotape.

There is no evidence in the record that the prosecutor suppressed evidence of the videotape or that anyone tampered with it. As early as November 24, 2009, the prosecutor informed Petitioner by letter that the bank had provided the prosecution and the Saginaw Police Department with identical video materials. The prosecutor explained that they were unable to view the recording, but that he had asked Detective Johnson to obtain copies that the parties could view. The prosecutor promised to provide Petitioner with a viewable copy of the videotape if and when it was obtained. (Pet. Ex. I.)

At a court hearing on February 1, 2010, the prosecutor informed the trial court that bank officials had provided the prosecution with the videotape and that the prosecution had provided a copy to the defense. The prosecutor explained that

25

neither party had been able to view the recording and that the bank had not yet provided the prosecution with a videotape in a viewable format.  (2/1/10 Hr'g Tr. 4-5.)  On March 15, 2010, the day before trial, Petitioner informed the trial court that he viewed the videotape for the first time five days prior.  He challenged the tape's authenticity and the chain of custody.  The trial court denied Petitioner's motion to suppress the videotape after explaining that the bank, not the prosecutor, had difficulties in acquiring a viewable videotape.  (5/15/10 Hr'g Tr. 3-4.)

Petitioner renewed his challenge to the authenticity of the videotape and its chain of custody on the first day of trial.  The prosecutor then explained once again that the bank had provided the videotape to the prosecution, but that the prosecutor's office lacked the proper equipment to play the tape.  The prosecutor further explained that, after the bank upgraded its surveillance system, it provided its equipment to the prosecutor's office so that the prosecutor could view the tape of the bank robbery.  The trial court ruled that it would be up to the jury to determine whether the videotape was accurate.  (3/16/10 Trial Tr. (Vol. I) 112-17.)

Detective Johnson subsequently testified that he received the videotape on the day of the robbery and that he had stored it in his department's property room.  (3/17/10 Trial Tr. (Vol. II) 76-77.).  He may have been referring to his copy of the videotape, because he previously stated in the jury's absence that the bank had the

original video and that he had a copy of the videotape.  (3/16/10 Trial Tr. (Vol. I) 113-14.)  Regardless of who had the original videotape, the record, as summarized above, demonstrates that the prosecutor did not withhold the videotape from Petitioner or mislead him about the tape.  In fact, Petitioner and his attorney confirmed receipt of a copy of the videotape about four months before trial.  The problem was the lack of compatible equipment for viewing the tape.  Once the bank provided its equipment to the prosecution, both parties were able to view it.

Furthermore, the videotape was not favorable to the defense and therefore, even assuming it was improperly suppressed, which it was not, no prejudice can be have said to have resulted.  Ms. Earle identified Petitioner in the videotape when it was played for the jury (*id*. at 128-30), and Detective Johnson testified that, when he showed the videotape to Petitioner, Petitioner asked to see the part where he was standing by the teller.  At some point during his viewing of the tape, Petitioner said, "That's me."  (3/17/10 Trial Tr. (Vol. II) 74, 77.)

The Court concludes that Petitioner has not stated a viable *Brady* claim because he has not shown that the prosecutor suppressed favorable evidence. Petitioner also has failed to show that the prosecutor vouched for Detective Johnson.  Improper vouching occurs when a prosecutor states or implies that he or she has special knowledge of facts not before the jury.  *United States v. Garcia*,

27

758 F.3d 714 (6th Cir. 2014) (pagination not yet assigned).  Nothing of the sort

occurred in this case.  To the extent Petitioner is claiming that the chain of custody

for the videotape was broken, his claim lacks merit because "a possible break in a

chain of custody does not necessarily render the physical evidence inadmissible,

but merely raises questions as to the weight to be accorded to the evidence."

*Harmon v. Anderson*, 495 F. Supp. 341, 343 (E.D. Mich. 1980) (citation omitted);

*accord United States v. Allen*, 619 F.3d 518, 525 (6th Cir. 2010).

### 2.  Officer Johnson's Report and Notes

Petitioner alleges that the prosecutor also withheld Detective Johnson's

police report and notes.  Although Petitioner says that the police report could have

been used to impeach Ms. Earle at the preliminary examination, he concedes that

he received the police report on February 1, 2010, about a month and a half before

trial.  *Brady* generally applies to a complete failure to disclose, not tardy

disclosure.  *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014).

As for Detective Johnson's notes of his interview with Ms. Earle, the

prosecutor stated at the pretrial hearing on February 1, 2010, that police officers

normally destroy their notes after they prepare a typewritten report and that is what

happened in this case.  (2/1/10 Hr'g Tr. 16.)  At trial, however, Detective Johnson

testified on cross-examination by Petitioner that he still had the notes and that the

28

notes were in the courtroom.  On redirect examination, Detective Johnson admitted that he had not given his notes to the prosecutor.

The prosecutor subsequently stated in the jury's absence that he was learning for the first time that day that the notes existed.  He promised to make a copy of the notes for Petitioner, and he stated that he had no objection to recalling Detective Johnson for additional questions after Petitioner looked at the notes.  Petitioner complained that the notes could have made a difference in his questioning of Ms. Earle, but the trial court stated that, if the notes were basically the same as Detective Johnson's report, they would be cumulative.  (3/17/10 Trial Tr. (Vol. II) 75-76, 82-83, 85-86.)

Petitioner not shown that Detective Johnson's notes were any different from Johnson's report of his interview with Ms. Earle.  Petitioner also has not shown that either the notes or the report were favorable to the defense and that their alleged suppression prejudiced him.  Therefore, he has not stated a *Brady* claim with respect to the notes or report.

### 3.  The Serial Numbers

Petitioner alleges that the prosecutor suppressed the serial numbers on the "bait" money that the bank robber took from Ms. Earle.  Petitioner contends that, if the serial numbers were produced and determined to be different from the numbers

29

on the money he possessed at his arrest, he could have established reasonable doubt as to whether he was the perpetrator.

Petitioner was arrested shortly after the commission of the bank robbery and was in possession of the precise amount of money reported stolen from the bank. Thus, even without the serial numbers, the evidence adduced at trial strongly suggested that Petitioner was the perpetrator. Petitioner speculates that the numbers on the "bait" money would not have matched the money he possessed at his arrest, but such speculation is insufficient to establish a *Brady* violation. *Henness v. Bagley*, 644 F.3d 308, 325 (6th Cir. 2011) (citation omitted).

Petitioner also contends that the prosecutor engaged in other misconduct by eliciting testimony that individuals at the bank during the commission of the robbery were crying and that Petitioner did not say anything when he got into the vehicle with Detective Johnson following his arrest. The elicitation of this testimony does not rise to the level of constitutional error, particularly where Petitioner does not argue that his post-*Miranda* silence was used against him. The Court therefore rejects all of Petitioner's claims of prosecutorial misconduct.

**G. The Carjacking Statute and Charge**

Petitioner's eighth claim alleges that the carjacking statute is void for vagueness and that the prosecutor abused his discretion when charging Petitioner with carjacking.

## 1. Void for Vagueness

"As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S. Ct. 1855, 1858 (1983). The carjacking statute in question here reads in relevant part:

> (1) A person who in the course of committing a larceny of a motor vehicle uses force or violence or the threat of force or violence, or who puts in fear any operator, passenger, or person in lawful possession of the motor vehicle, or any person lawfully attempting to recover the motor vehicle, is guilty of carjacking, a felony punishable by imprisonment for life or for any term of years.

> (2) As used in this section, "in the course of committing a larceny of a motor vehicle" includes acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the motor vehicle.

Mich. Comp. Laws § 750.529a(1) and (2).

Petitioner claims that this statute is vague as to the "attempt" element. An ordinary person, however, could understand from subsection 2 of the statute that an

31

"attempt" means an effort, endeavor, or undertaking to commit a larceny of a vehicle. Due process "does not require 'impossible standards' of clarity,' " *Kolender*, 461 U.S. at 361, 103 S. Ct. at 1860 (quoting *United States v. Petrillo*, 332 U.S. 1, 7-8, 67 S. Ct. 1538, 1541-42 (1947)), and the carjacking statute at issue here is clear. The language "conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. The Constitution requires no more." *Petrillo*, 332 U.S. at 8, 67 S. Ct. at 1542. Therefore, the state appellate court's rejection of Petitioner's claim was objectively reasonable.

### 2. The Prosecution's Charging Decision

Petitioner contends that the prosecutor abused his discretion when he charged Petitioner with carjacking. Petitioner argues that the correct charge was resisting and obstructing Detective Scott Jackson, not carjacking.

Prosecuting attorneys retain broad discretion to enforce criminal laws. *United States v. Armstrong*, 517 U.S. 456, 464, 116 S. Ct. 1480, 1486 (1996).

> As a result, [t]he presumption of regularity supports their prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties. In the ordinary case, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.

*Id.* (internal quotation marks and citations omitted).

As explained more fully below, *see infra*, there was probable cause to believe that Petitioner attempted to take Detective Jackson's vehicle after the bank robbery. Detective Jackson testified that Petitioner entered the passenger side of his unlocked vehicle, pressed his left shoulder against Detective Jackson's right shoulder, and placed both his hands on the steering wheel. Detective Jackson felt the force of Petitioner's body and thought that Petitioner was trying to take his car in an effort to get away from the marked police vehicle.

Detective Jackson's testimony established that Petitioner used force in an attempt to take Jackson's motor vehicle. Thus, the state court's conclusion – that the prosecutor did not abuse his discretion in charging Petitioner with carjacking – was reasonable.

## H. The State's 180-day Rule

The ninth claim alleges that the state trial court violated Michigan's speedy trial statute (Mich. Comp. Laws § 780.131[3]) by not notifying the Saginaw County

---

[3] This statute provides:

(1) [w]henever the department of corrections receives notice that there is pending in this state any untried warrant, indictment, information, or complaint setting forth against any inmate of a correctional facility of this state a criminal offense for which a prison

Prosecutor that Petitioner should be tried within 180 days.  As a result, Petitioner

---

sentence might be imposed upon conviction, the inmate shall be
brought to trial within 180 days after the department of corrections
causes to be delivered to the prosecuting attorney of the county in
which the warrant, indictment, information, or complaint is pending
written notice of the place of imprisonment of the inmate and a
request for final disposition of the warrant, indictment, information, or
complaint. The request shall be accompanied by a statement setting
forth the term of commitment under which the prisoner is being held,
the time already served, the time remaining to be served on the
sentence, the amount of good time or disciplinary credits earned, the
time of parole eligibility of the prisoner, and any decisions of the
parole board relating to the prisoner. The written notice and statement
shall be delivered by certified mail.

Mich. Comp. Laws § 780.131(1).  The Michigan Supreme Court explained in
*People v. Lown*, 488 Mich. 242, 794 N.W.2d 9 (2011), that

[t]he object of this rule is to dispose of new criminal charges against
inmates in Michigan correctional facilities; the rule requires dismissal
of the case if the prosecutor fails to commence action on charges
pending against an inmate within 180 days after the Department of
Corrections (DOC) delivers notice of the inmate's imprisonment. . . .
The rule does not require that a *trial* be commenced or completed
within 180 days of the date notice was delivered.  Rather, . . . it is
sufficient that the prosecutor "proceed promptly" and "move [ ] the
case to the point of readiness for trial" within the 180–day period.
*People v. Hendershot*, 357 Mich. 300, 304, 98 N.W.2d 568 (1959). . .
. [T]he relevant question is . . . whether action was commenced within
180 calendar days following the date the prosecutor received the
notice.  If so, the rule has been satisfied unless the prosecutor's initial
steps are "followed by inexcusable delay beyond the 180–day period
and an evident intent not to bring the case to trial promptly. . . ."

*Id*. at 246-47, 794 N.W.2d at 11-12 (emphasis in original).

argues that he did not receive jail credit for sixty-five days.

"[F]ederal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102 (1990) (citations omitted). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S. Ct. 475, 480 (1991) (citations omitted). Thus, a violation of a state speedy trial law is not a basis for habeas relief.

Furthermore, the Michigan Court of Appeals stated that the statute applies only to defendants who incarcerated in a state correctional facility at the time of trial. Because Petitioner conceded that he was awaiting trial in a county jail, the Court of Appeals concluded that the statute did not apply to him, even if he was a parolee at the time.

Petitioner argues that it is a violation of his right to equal protection of the law not to apply the 180-day rule to parolees. But the Court of Appeals, citing *People v. Lown*, 488 Mich. 242, 246-47, 794 N.W.2d 9, 11-12 (2011), explained that even if the statute applied to Petitioner, "[t]he prosecutor undertook action to bring [Petitioner] to trial within 180 days and those preliminary actions were not followed by inexcusable delay." *White*, No. 297914, 2011 WL 2424504, at *7. The state court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1),

35

and its interpretation of state law binds this Court on habeas review. *Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S. Ct. 602, 604 (2005) (citations omitted).

Petitioner is not entitled to habeas relief on his ninth claim.

## I.  The Appeal

In his tenth claim, Petitioner argues that the Michigan Court of Appeals deprived him of his due process rights on appeal by virtue of declining to address the merits of some of his claims.  The reason supplied by the state court for proceeding in this fashion was that Petitioner failed to brief the issues.  In his habeas application, Petitioner contends that the Michigan Court Rules do not require that all issues be briefed.  This court, however, does not function as an additional state appellate court reviewing state-court decisions on state law or procedure.  *Allen v. Morris*,  845 F.2d 610, 614 (6th Cir. 1988) (citation omitted). Federal courts are obligated to accept as valid a state court's interpretation of state law and rules of practice of that state.  *Id.* (citation omitted).  Even if the trial court violated the Michigan Court Rules, "[a] federal court may not issue the writ on the basis of a perceived error of state law." *Harris*, 465 U.S. at 41, 104 S. Ct. at 875. The Court therefore declines to grant relief on claim ten.

## J.  The Sufficiency of the Evidence and the Sentencing Guidelines

Petitioner's eleventh, and final, claim is a challenge to both the sufficiency of the evidence sustaining his convictions as well as the trial court's scoring of the Michigan sentencing guidelines. The Court addresses these challenges in turn.

### 1. The Sufficiency of the Evidence

Petitioner alleges that the evidence at trial was insufficient to support the jury's verdict on counts two through four: false report of a bomb threat; carjacking; and resisting and obstructing a police officer. The state appellate court disagreed, holding that sufficient evidence supported all three convictions.

Pursuant to Supreme Court precedent, evidence adduced at trial is sufficient to support a conviction whenever, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16, 99 S. Ct. at 2792 n.16. "It is the province of the fact-finder to weigh the probative value of the evidence and resolve any conflicts in testimony[,]" not that of a reviewing court. *Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003). "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial . . . . This

deferential standard does not permit . . . fine-grained factual parsing." *Coleman v. Johnson*, __ U.S. __, 132 S. Ct. 2060, 2064 (2012) (citations and internal quotation marks omitted).

Because Petitioner's sufficiency of the evidence challenge with respect to the three challenged convictions were adjudicated on the merits by the Michigan Court of Appeals, this Court must view the state court's determination through the lens of 28 U.S.C. § 2254(d)(1).  As framed by AEDPA, the issue is whether the Michigan Court of Appeals unreasonably applied *Jackson* to the facts of Petitioner's case.  "[A] state-court decision rejecting a sufficiency challenge may not be overturned on federal habeas unless the 'decision was "objectively unreasonable."'" *Parker v. Matthews*, __ U.S. __, 132 S. Ct. 2148, 2152 (2012) (quoting *Cavazos v. Smith*, 565 U.S. 1, __, 132 S. Ct. 2, 3 (2011) (per curiam)).  Given the procedural posture of this case, "the law . . . commands deference at two levels . . . first, to the jury's verdict as contemplated by *Jackson*, and, second, to the state court's consideration of the jury's verdict as dictated by AEDPA." *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007).

### a.  False Report of a Bomb Threat

Petitioner was charged with making a false report of an explosive substance in a building and "communicat[ing] or caus[ing] the communication of the false

report to any other person, knowing the report to be false."  Mich. Comp. Laws §

750.411a(2)(a).  This charge was based on the note that Petitioner handed the bank

teller, Ms. Earle.  According to Petitioner, there was no evidence that he threatened

Ms. Earle with a bomb.  Petitioner raised this argument in the Michigan Court of

Appeals on direct review and the court rejected it, finding "no merit to

[Petitioner's] argument that because Earle was unable to read the part in the note

that concerned the bomb, [Petitioner] did not communicate a false bomb threat."

*White*, No. 297914, 2011 WL 2424504, at *3.  The court explained that "by

handing the note with a bomb threat to Earle, [Petitioner] intended, and did what

was necessary by him, to make known . . . the presence of a bomb . . . ."  *Id.*

During trial, Ms. Earle testified that Petitioner handed her a note, which said,

"Do not call, the bomb will go off.  Lock the door for 30 minutes.  You are being

watched.  Do not call."  (3/16/10 Trial Tr. (Vol. I) 131.)  Ms. Earle admitted that,

because the handwriting was difficult to read, she read only the bottom part of the

note, which said, "Lock the door.  Do not call for 30 minutes.  You are being

watched."  (*Id.* at 123.)  Police officer Michael Murphy, however, testified that,

when he interviewed Ms. Earle after the robbery, she described the note as saying:

"Do not call, the bomb will go off.  Lock the door for 30 minutes.  You are being

watched.  Do not call." (3/17/10 Trial Tr. (Vol. II) 21.)  And Detective Jackson

39

testified that, when he encountered Petitioner on the street, Petitioner matched the

description of "the person who had just committed a bank robbery and threatened

to blow the bank up . . . ."  (*Id*. at 46.)

A rational trier of fact could have concluded from this evidence, taken in the

light most favorable to the prosecution, that Petitioner communicated a bomb

threat to Ms. Earle.  The state court's determination that the evidence was

sufficient to support Petitioner's conviction for false report of a bomb threat was

not objectively unreasonable.

### b.  Carjacking

The carjacking statute provides:

> [a] person who in the course of committing a larceny of a motor
> vehicle uses force or violence or the threat of force or violence, or
> who puts in fear any operator, passenger, or person in lawful
> possession of the motor vehicle, or any person lawfully attempting to
> recover the motor vehicle, is guilty of carjacking . . . .

Mich. Comp. Laws § 750.529a(1).  Carjacking includes attempts to commit a

larceny of a motor vehicle.  *Id.* § 750.529a(2) ("As used in this section, 'in the

course of committing a larceny of a motor vehicle' includes acts that occur in an

attempt to commit the larceny . . . ."); *People v. Williams*, 288 Mich. App. 67, 80,

792 N.W.2d 384, 391 (Mich. Ct. App. 2010) (noting that, when the state legislature

amended the statute in 2004, it "removed the language 'robs, steals, or takes,'

40

insinuating that the revised statute was intended to include attempts to commit the designated crime").

Petitioner argues that there was no evidence he took or attempted to take Detective Jackson's vehicle, that he used or threatened to use force or violence or that he put Detective Jackson in fear.

Detective Jackson testified that, when pulled his vehicle in front of Petitioner, Petitioner walked toward his vehicle with his thumb up as if he were hitchhiking. Petitioner was watching the marked patrol car behind Detective Jackson as he did this. After Jackson stopped his car, Petitioner entered the passenger side through an unlocked door, pressed his left shoulder against Detective Jackson's right shoulder, and placed both of his hands on the steering wheel while Detective Jackson remained seated in the driver's seat. Detective Jackson felt the force of Petitioner's body, and he initially was unable to shove Petitioner out of the car. In his opinion, Petitioner was attempting to take his car in an effort to get away from the marked squad car that Petitioner had been watching. (3/17/10 Trial Tr. (Vol. II) 28-33, 46.)

A rational juror could have concluded from this testimony that Petitioner used force in an attempt to take a vehicle from someone who was in lawful possession of the vehicle. Thus, the evidence was sufficient to support Petitioner's

41

conviction for carjacking and the state court's determination in this regard was not objectively unreasonable.

### c. Resisting and Obstructing a Police Officer

In Michigan,

> [t]he elements of resisting and obstructing a police officer under MCL 750.81d(1) are: (1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties.

*People v. Quinn*, __ N.W.2d __, __, No. 309600, 2014 WL 2219246, at *4 (Mich. Ct. App. May 29, 2014) (internal quotation marks and citation omitted).

Petitioner claims that there was insufficient evidence that he knew Detective Jackson and Officer Wenger were police officers until long after the altercation began. This claim is belied by the record. Detective Jackson testified that, after he forced Petitioner out of his vehicle, the two of them fell to the ground. He repeatedly stated, "Police, give me your hands." He was able to get control of Petitioner's left hand, but not Petitioner's right hand, which was underneath Petitioner's body. He could hear Officer Wenger's siren as he struggled with Petitioner. Officer Wenger then arrived and said the same thing: "Give me your hands." When Petitioner did not respond, Officer Wenger deployed a taser. After the effect of the taser wore off, they got back on top of Petitioner, but they still

42

could not get Petitioner's right hand and arm from underneath him, because he was still resisting. Shortly afterward, they gained control of Petitioner's right arm, placed him in handcuffs, and took him into their custody. (3/17/10 Trial Tr. (Vol. II) 33-38, 43.)

Officer Wenger testified that, as Petitioner and Detective Jackson wrestled on the ground, he heard Detective Jackson inform Petitioner that he was a police officer. Wenger indicated that he advised Petitioner that he was a police officer and that he had to deploy his taser to get control of Petitioner. (*Id*. at 55-58.)

A rational trier of fact could have concluded from the evidence taken in the light most favorable to the prosecution that Petitioner was aware of the officers' identity as police officers and that he resisted and obstructed them. The evidence therefore was sufficient to support Petitioner's conviction for resisting and obstructing a police officer.

Even if the Court had determined that the evidence was insufficient to sustain the jury's verdict, the state appellate court's conclusion – that the prosecutor produced sufficient evidence on the three counts in question – was objectively reasonable. Petitioner therefore has no right to relief on the basis of his challenge to the sufficiency of the evidence.

## 2.  The Sentence

Petitioner claims that his sentence was based on improperly scored guidelines and on inaccurate information. Specifically, Petitioner contends that offense variable nine (number of victims) was improperly scored. Petitioner contends that there was only one victim to the carjacking (Detective Jackson) and, therefore, he should not have been scored points for multiple victims.

Like the Michigan Court of Appeals, this Court finds no merit to Petitioner's claim. To begin with, the state court's interpretation and application of state sentencing laws and guidelines is a matter of state concern only, *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003), and "[a] federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law." *Harris*, 465 U.S. at 41, 104 S. Ct. at 875. Federal courts must "defer to a state's judgment on issues of state law" and "accept a state court's interpretation of its statutes." *Israfil v. Russell*, 276 F.3d 768, 771-72 (6th Cir. 2001). Consequently, the contention that the trial court miscalculated the state sentencing guidelines is not cognizable on federal habeas corpus review. *Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007); *McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006); *Robinson v. Stegall*, 157 F. Supp. 2d 802, 823 (E.D. Mich. 2001).

Petitioner nevertheless maintains that he was sentenced on the basis of inaccurate information in violation of his constitutional right to due process. To

44

prevail on this argument, Petitioner must show that his sentence was founded on

"misinformation of constitutional magnitude," *United States v. Tucker*, 404 U.S.

443, 447, 92 S. Ct. 589, 592 (1972), or on "extensively and materially false"

information that he had no opportunity to correct through counsel, *Townsend v.*

*Burke*, 334 U.S. 736, 741, 68 S. Ct. 1252, 1255 (1948).

Petitioner received ten points for offense variable nine, which is appropriate

if "[t]here were 2 to 9 victims who were placed in danger of physical injury or

death."  Mich. Comp. Laws § 777.39(1)(c).  Although Petitioner argues that

Detective Jackson was the only victim of the carjacking, the Michigan Court of

Appeals determined that Officer Wenger also was a victim.  The state court noted

that Officer Wenger was placed in danger of physical injury when he helped

Detective Jackson restrain Petitioner after Jackson pushed Petitioner out of his

vehicle.  Petitioner therefore has failed to show that he was sentenced on the basis

of materially false information which he had no opportunity to correct.  His

constitutional claim lacks merit.

## IV.  CERTIFICATE OF APPEALABILITY

Petitioner may not appeal the Court's denial of his habeas petition unless a

district or circuit judge issues a certificate of appealability.  28 U.S.C. §

2253(c)(1)(A).  A certificate of appealability may issue "only if the applicant has

45

made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029, 1034 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 (2000)). When, as here, "a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604.

Reasonable jurists would not debate the Court's assessment of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further. The Court therefore declines to issue a certificate of appealability. Petitioner nevertheless may proceed *in forma pauperis* on appeal because he was granted leave to proceed *in forma pauperis* in this Court, and an appeal could be taken in good faith. Fed. R. App. P. 24(a)(3)(A).

## V.  CONCLUSION AND ORDER

For all the reasons stated herein, the state court's rejection of Petitioner's

claims was objectively reasonable.  Petitioner is therefore not entitled to the issuance of the writ of habeas corpus.

Accordingly,

**IT IS ORDERED** that the petition for writ of habeas corpus (ECF No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's motion for relief from judgment, which seeks appointment of counsel and an evidentiary hearing or a stay (ECF No. 20), is **DENIED**.  Petitioner has no constitutional right to appointment of counsel in habeas proceedings, *Post v. Bradshaw*, 422 F.3d 419, 425 (6th Cir. 2005), and the state court's adjudication Petitioner's claims on the merits precludes this Court from holding an evidentiary hearing on those claims,  *Pinholster*, 131 S. Ct. at 1398.

**IT IS FURTHER ORDERED** that Petitioner's motion to supplement his motion for summary judgment with additional caselaw (ECF No. 22) is **GRANTED**.  However, because no material facts are in dispute and Petitioner is not entitled to judgment as a matter of law, Federal Rule of Civil Procedure 56, Petitioner's motion for summary judgment (ECF No. 21) is **DENIED**.

Dated: September 17, 2014

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
**Mark White**, #228524
Chippewa Correctional Facility
4269 W. M-80
Kincheloe, MI  49784

**Laura Moody, A.A.G.**
**Bruce H. Edwards, A.A.G.**

48